**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS**

**Plaintiff: Michael Doe X (Pseudonym),**

  Email: doexmichael@gmail.com

**Defendant:** President and Fellows of Harvard College,

**Phone Number:** 617-495-1280,   Fax: 617-495-5079.

 **Address:** Smith Campus Center, Suite 980, 1350 Massachusetts Avenue,

  Cambridge, MA 02138-3834

**Defendant:** Hospital: Mount Auburn Hospital,

  330 Mount Auburn Street Cambridge, MA 02138.

 Main Phone: 617-492-3500 , 617-499-5021

**Defendant:** Tufts Medical Center, Inc.

 Address: 800 Washington Street, #451, Boston, MA 02111

 Telephone: 617-636-7730   617-636-5000

**Civil Action No:**

**COMPLAINT AND JURY DEMAND**

**INTRODUCTION**

**1.** Plaintiff brings this civil rights action against Harvard College and associated entities, alleging a coordinated institutional takedown, retaliatory prosecution and conspiracy. "This case involves highly sensitive allegations of **state-sanctioned false imprisonment** and the **unlawful and violent seizure and forced detention of the Plaintiff**. Through the **malicious weaponization of mental health statutes** and acts of **institutional torture** perpetrated under the color of law, the Defendants engaged in a coordinated effort to silence the Plaintiff's protected grievances. To protect Plaintiff from the "cascading harm" of Medical Defamation and permanent "medical blacklisting," Plaintiff requests leave to proceed under a pseudonym.

**2.** This is a civil rights action brought to redress a calculated institutional conspiracy, disability discrimination, institutional takedown, institutional retaliation and indifference, a campaign of "institutional torture" and institutional retaliatory prosecution and conspiracy orchestrated by Harvard University and its agents, Mount Auburn hospital and Tuft medical center. Plaintiff, a

1

Harvard Research Fellow and a "qualified individual with a disability" under the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act, brings this suit following a catastrophic deprivation of constitutional and most basic human rights.

3.    This action arises from the Defendants bad-faith and malicious weaponization of the Plaintiff's disclosed disability and the pretextual use of mental health statutes—specifically **M.G.L. c. 123, § 12**—to effectuate an **unlawful seizure and state-sanctioned custodial detention.** Possessing actual knowledge of the Plaintiff's specific vulnerabilities and disability, Harvard Police and Harvard accommodation management **deliberately coached and induced student long term harassment** against the Plaintiff to create a hostile and predatory living environment. This bad-faith exploitation of the Plaintiff's medical condition and disability— culminating in a violent physical harassment and open insult plaintiff in corridor, retaliatory police open insult and unlawful seizure—constitutes the **Intentional Infliction of Mental Distress and emotional torture and physical torture**, resulting in profound **cognitive deterioration and worsening physical pain , loss of executive function.**

4.    "The Defendants maliciously destroyed the Plaintiff's health by coaching students to conduct long-term harassment and systematic sleep deprivation. This deliberate exploitation of the Plaintiff's known vulnerabilities directly caused profound cognitive deterioration, loss of executive function, and chronic physical pain. This calculated destruction of the Plaintiff's mental and physical capabilities constitutes the Intentional Infliction of Emotional Distress and an extreme departure from all bounds of human decency."

5.    Following Plaintiff's protected disclosures regarding Harvard police misconduct and housing mismanagement wrongdoing: Defendants engaged in a coordinated "proxy harassment" campaign. Harvard Accommodation Management and HUPD actively coached and provoked students to manufacture false complaints against the Plaintiff to create a pretext for self-help eviction. These harassment was designed to break Plaintiff's neurological stability, resulting in selective mutism and a total collapse of executive function. This institutional retaliation culminated in a midnight confrontation and an illegal self-help eviction, bypassing all requisite housing and disability due process.

6.    Central to this Complaint is the Defendants' use of Medical Fraud and Clinical Gaslighting. To provide a veneer of legality for Plaintiff's unlawful detention, Defendants entered fabricated claims of "suicidality" etc. into the medical record. This "Medical Defamation" has resulted in a

2

permanent "medical blacklist," causing "cascading harm" that sabotages Plaintiff's ability to receive legitimate treatment for documented PTSD and a Traumatic Brain Injury (TBI).

7. While in custodial detention, Plaintiff was subjected to conditions that shock the conscience, including the intentional denial of water, sleep deprivation, and a total severance from established medical providers-Plaintiff 's Primary care physician. This campaign was specifically designed to break Plaintiff's neurological stability, resulting in a profound collapse of executive function and a state of selective mutism.

8. "Most egregiously, the Defendants' conspiracy was executed while Plaintiff's mother was in the final stages of terminal cancer. By inducing a state of neurological regression and maintaining an unlawful custody, Defendants intentionally and maliciously **severed the Plaintiff's protected right to Familial Association**, depriving the Plaintiff of the final opportunity to provide support to, or communicate with plaintiff's dying parent. This permanent and irreparable destruction of a sacred bond—carried out with callous disregard for the Plaintiff's known vulnerabilities— constitutes the **Intentional Infliction of Emotional Distress** and an extreme departure from all bounds of human decency. As a direct result of this institutional torture, the Plaintiff suffered profound **permanent damages, including a regression from selective mutism into chronic medical mutism**, representing a catastrophic and lasting cognitive and emotional injury."

9. Plaintiff seeks redress under 42 U.S.C. §§ 1983 and 1985 for violations of the First, Fourth, and Fourteenth Amendments—specifically the right to be free from unreasonable seizures, the right to due process, and the right to be free from retaliation for protected whistleblowing. These violations were committed under color of law through a conspiracy between Harvard University and Hospital Defendants to weaponize medical authority for non-clinical, retaliatory ends. Instead of providing the protections mandated for a whistleblower, Harvard University orchestrated an 'institutional takedown' and a discriminatory self-help eviction in violation of M.G.L. c. 186, § 14.

10. By fabricating medical records, engaging in Medical Fraud, and exercising coercive control—while simultaneously withholding treatment for Plaintiff's actual mental distress and Traumatic Brain Injury (TBI)—the Defendants committed an egregious Abuse of Process. Plaintiff further asserts claims under the Americans with Disabilities Act (ADA), Section 504 of the Rehabilitation Act, the Fair Housing Act, and the Massachusetts Civil Rights Act for the catastrophic destruction of Plaintiff's mental, physical, and professional life. The Defendants' actions represent a total abandonment of their 'duty of care' and a violation of the Massachusetts

Patients' Bill of Rights, necessitating both compensatory and punitive damages to address the profound moral injury and 'cascading harm' inflicted."

## JURISDICTION AND VENUE

**11. Federal Question Jurisdiction** This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 (Federal Question) and 28 U.S.C. § 1343 (Civil Rights). Plaintiff's claims arise under the Constitution and laws of the United States, specifically: The Civil Rights Act of 1871 (42 U.S.C. §§ 1983 and 1985), for violations of the First, Fourth, and Fourteenth Amendments committed under color of law. The Americans with Disabilities Act (42 U.S.C. § 12101 et seq.) and Section 504 of the Rehabilitation Act, regarding disability discrimination and retaliation by an institution receiving federal financial assistance. The Fair Housing Act (42 U.S.C. § 3601 et seq.), regarding discriminatory practices in residential housing. At all times relevant, Defendant HUPD and its officers acted as state actors under color of law pursuant to M.G.L. c. 22C, § 63, which grants Harvard University Police the same powers as city police, and through their coordinated conspiracy with Hospital Defendants to execute state-sanctioned involuntary commitments."

**12. Supplemental Jurisdiction** This Court has supplemental jurisdiction over Plaintiff's state law claims—including violations of M.G.L. c. 123 (Section 12 Abuse), M.G.L. c. 186, § 14 (Illegal Eviction), and Intentional Infliction of Emotional Distress—pursuant to 28 U.S.C. § 1367. These state claims are so related to the federal civil rights claims that they form part of the same case or controversy and derive from a "common nucleus of operative fact."

**1 3. Personal Jurisdiction** This Court has personal jurisdiction over Defendants because: Harvard University, HUPD, Mount Auburn Hospital, and Tufts Medical Center are all located and/or incorporated within the Commonwealth of Massachusetts. Defendants conduct substantial and continuous business operations within this District. The unlawful acts, including the seizure of Plaintiff and the fabrication of medical records, occurred entirely within the Commonwealth of Massachusetts.

**1 4. Venue** Venue is proper in the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to the claims occurred in Cambridge and Boston, Massachusetts, and all Defendants reside or

operate within this District.

**PARTIES**

**15. Plaintiff:  Michael Doe X (Pseudonym),** was a research fellow at Harvard residing in Harvard University-approved sublet housing, at all times relevant to this Complaint, Plaintiff is a "qualified individual with a disability" as defined by the ADA, specifically suffering from a documented Traumatic Brain Injury (TBI) and PTSD, as well as other physical injury. Plaintiff brings this action under a pseudonym to prevent further "Medical Defamation" and "Medical Blacklisting" arising from the Defendants' fraudulent records.

**16. Defendant:** President and Fellows of Harvard College, Cambridge, Massachusetts. MA02138. Non-profit educational corporation organized under the laws of the Commonwealth of Massachusetts, with a principal place of business in Cambridge, Massachusetts. Harvard is a recipient of federal financial assistance, subjecting it to Section 504 of the Rehabilitation Act. Harvard is legally responsible for the actions of its departments, including Harvard Housing and Harvard university police department ( HUPD).
**Phone Number:** 617-495-1280,   Fax: 617-495-5079.
**Address:** Smith Campus Center, Suite 980, 1350 Massachusetts Avenue,
          Cambridge, MA 02138-3834

**17. HARVARD UNIVERSITY POLICE DEPARTMENT (HUPD)** An agency of Harvard University. Pursuant to **M.G.L. c. 22C, § 63,** HUPD officers are appointed as Special State Police Officers. At all times relevant, HUPD and its officers acted **"under color of law"** and exercised the coercive power of the state to effectuate seizures and involuntary transport.

18. Harvard University Police Officer **D** whose identity (name) is currently unknown

19. Harvard University Police Officer **G**. whose identity (name) is currently unknown

20. **Assault and Use of Excessive Force:** On January 11, 2023, Defendant Harvard Police Officer (hereinafter "Officer D") gained entry to the Plaintiff's residence by force. Upon entry, Officer D drew his service firearm and leveled it at the Plaintiff, an act of excessive force that compelled the Plaintiff to kneel and plead for their life.

5

21. **Retaliatory Seizure:** Harvard Police Officer D initiated a custodial seizure and involuntary transport under the pretext of **M.G.L. c. 123, § 12**. This action was not taken for the Plaintiff's safety, but as a retaliatory measure intended to cause trauma and facilitate the Plaintiff's forced removal from Harvard accommodations.

22. **Interference with Medical Care and Evidence:** During the encounter, Officer D deliberately suppressed medical evidence that would have invalidated the Section 12 criteria. Specifically, Officer D:

    a. **Prohibited** the Plaintiff from contacting own primary care physician;

    b. **Prohibited** the Plaintiff from contacting own Harvard-affiliated psychiatrist; and

    c. **Refused to review** or allow the Plaintiff to present existing medical letters from primary career physicians and Psychiatrist which documented the Plaintiff's stable condition.

23. **Deprivation of Basic Needs and Due Process:** Prior to the forced departure, Officer D maintained a hostile and custodial environment by:

    a. **Denying** the Plaintiff's request for a glass of water; and

    b. **Forbidding** the Plaintiff from making any telephone calls to legal counsel or support, effectively isolating the Plaintiff during a state-sanctioned seizure

24. **Verbal Abuse and Supervised Harassment:** Following the Plaintiff's call 911 for assistance on December 27, 28, 29 2022,, Officer D arrived at the Plaintiff's residence in the middle of the night. Instead of providing aid, Officer D supervised and permitted other HUPD officers to subject the Plaintiff to open insults and verbal harassment in the public corridor, exacerbating the Plaintiff's distress and creating a hostile environment.

25. **Interference with Medical Assessment:** Upon the arrival of Emergency Medical Services (EMS), Officer D actively interfered with the medical standard of care. Officer D **prohibited medical staff** from performing a proper independent evaluation of the Plaintiff's physical and mental status within the apartment, asserting police control over medical necessity to ensure the involuntary seizure proceeded without clinical contradiction.

**26.  Unnecessary Use of Restraint and Loss of Liberty:** Despite the Plaintiff being non-combative and capable of movement, Officer D **prohibited the Plaintiff from walking** to the awaiting ambulance. Officer D instead forced the Plaintiff onto a medical stretcher under threat of further force. This unnecessary physical restraint was a tactical display of power that resulted in a total loss of liberty and was intended to humiliate and dehumanize the Plaintiff.

27. **Discriminatory Denial of Protection:** During the midnight encounter, Officer D explicitly stated that HUPD's protective mandate applied exclusively to "students" and specifically excluded "Fellows," such as the Plaintiff. By openly declaring that the Plaintiff was ineligible for police protection, Officer D violated the **Equal Protection Clause** and signaled to all present ( students harassed Plaintiff)  that the Plaintiff could be targeted without consequence.

28. **Inducement of a Hostile Environment (State-Created Danger):** Officer D utilized his authority to intentionally collapse the Plaintiff's physical and mental well-being. By insulting the Plaintiff in public corridors and announcing a refusal to protect "Fellows," Officer D: **(A) Coached and emboldened** a predatory environment where other students felt licensed to harass and abuse the Plaintiff; **(B) Deliberately increased the risk of harm** to the Plaintiff by removing the "deterrent" effect of a police presence; and **(C) Targeted the Plaintiff's known vulnerabilities**, intending to cause a total physical and mental collapse through sustained, state-sanctioned isolation.

29      **Harvard University Police Officer G:  Interference with Medical Care and Evidence:**  January 11-12, in Hospital, Harvard Police Officer G deliberately **(A)Prohibited** the Plaintiff from contacting own primary care physician; **(B) Prohibited** the Plaintiff from contacting own Harvard-affiliated psychiatrist;  **(C) Prohibited** the Plaintiff in Ambulance and Hospital got basic medical treatment for injury, Police officer G seizured Plaintiff ruthless when Plaintiff run out from Hospital door to seek help. Harvard Police officer G  committed an **unreasonable seizure and excessive force** by ruthlessly restraining the Plaintiff to prevent plaintiff from seeking help and escaping a forced detention without clear legal justification. Furthermore, the officer violated the Plaintiff's **due process rights** by intentionally interfering with essential medical care and prohibiting contact with the Plaintiff's established physicians.

**30  HARVARD UNIVERSITY HOUSING / CAMPUS SERVICES : Walker, Nathan,**

**31.** Harvard University Peabody Accommodation Manager: **Deveau, Kathryn.Harvard housing** department of Harvard responsible for the management of the Peabody and Business School residences. This department is responsible for the "Proxy Harassment" and the illegal self-help eviction of the Plaintiff,

**32. Defendant:** Mount Auburn Hospital,

330 Mount Auburn Street Cambridge, MA 02138.

Main Phone: 617-492-3500 , 617-499-5021

**33.** Mount Auburn Hospital acted as a **"joint participant"** with HUPD in the unlawful detention of the Plaintiff and is responsible for the initial "Clinical Gaslighting" and denial of access to Plaintiff's Primary Care Physician. By deliberately misdiagnosing Plaintiff and then transferring to a psychiatric facility, Mount Auburn Hospital effectively "cemented" a false medical narrative into a permanent record, making it much harder to get the correct treatment for Plaintiff's **TBI (Traumatic Brain Injury)** and **PTSD**

**34..  Joint Participation in Unlawful Detention:** Defendant Mount Auburn Hospital acted as a "joint participant" with HUPD in the unlawful seizure of the Plaintiff. By accepting the Plaintiff under a pretextual Section 12 and refusing to discharge the Plaintiff upon the presentation of contradictory medical evidence, the hospital provided the "state-sanctioned" clinical cover necessary to maintain the unlawful detention.

**35. Clinical Gaslighting and Denial of Counsel:** Hospital staff engaged in "Clinical Gaslighting" by deliberately ignoring the Plaintiff's factual accounts of medical history. Despite the Plaintiff's lack of a prior psychiatric record, the Hospital: **Denied access** to the Plaintiff's Primary Care Physician (PCP), who possessed the accurate medical history; **Disregarded** the Plaintiff's requests for an independent medical evaluation; and **Isolated** the Plaintiff from medical advocates to maintain a false diagnostic narrative.

**36. Medical Malpractice and Misdiagnosis (Car Accident Injury):** The Hospital demonstrated gross negligence in treating the Plaintiff's injuries sustained in a recent car accident. Because the Plaintiff had no prior hospital record and was unfamiliar with medical procedures, the Hospital took advantage of this lack of "medical literacy" to: **Issue a**

8

misdiagnosis that ignored physical trauma from the accident; **Attribute physical pain** to psychiatric causes without performing necessary diagnostic imaging or tests; and **Fail in their Duty of Care** by prioritizing the HUPD-fabricated psychiatric narrative over the objective physical injuries resulting from the motor vehicle accident.

37. **Compounding Damages**: Negligent Transfer and Chain of Misdiagnosis. **(A) Failure to Provide Medical Clearance:** Under standard medical protocols, a patient must be "medically cleared" before being sent to a psychiatric facility. Mount Auburn Hospital failed this duty by ignoring the Plaintiff's physical trauma from the car accident. They transferred a patient with an active **Traumatic Brain Injury (TBI)** into a psychiatric setting, which is a dangerous and inappropriate environment for neurological recovery. **(B) The "Inherited" Misdiagnosis:** By sending the Plaintiff to Tufts with a pretextual psychiatric label, Mount Auburn ensured that Tufts staff would view the Plaintiff through a biased lens. This is **"Diagnostic Overshadowing"**— where the physical symptoms of the car accident (confusion, pain, light sensitivity, and PTSD startle responses) were wrongly interpreted by Tufts as symptoms of mental illness. **(C) Exacerbation of PTSD:** Forcing a victim of a recent violent car accident into a locked mental health facility—against their will and without access to their own doctors—constitutes a secondary trauma. This environment directly worsened the Plaintiff's **PTSD symptoms**, creating a feedback loop where the Plaintiff's natural distress was used as further "evidence" of a psychiatric condition. **(D) Deprivation of TBI Treatment:** While detained at Tufts based on Mount Auburn's misdiagnosis, the Plaintiff was denied the specialized neurological care, rest, and physical therapy required to treat a TBI, leading to **profound cognitive deterioration** and permanent physical pain.

38. **Defendant:**  Tufts Medical Center, Inc.

   Address: 800 Washington Street, #451, Boston, MA 02111

   Telephone: 617-636-7730   617-636-5000

39. Tufts is responsible for the 10 days retaliatory detention, the fabrication of mental health diagnoses (Medical Fraud), and the coordinated effort with Harvard to pressure the Plaintiff to vacate own housing while in a state of "selective mutism." Tufts Medical Center is accused of violating federal law in three primary ways: **(A) HIPAA (45 CFR § 164.524):** By withholding plaintiff's medical records for over two years, the hospital breached the federal **Right of Access**, which mandates that providers furnish records within 30 days. Additionally, the unauthorized

presence of PhD students during private medical discussions constitutes an improper disclosure of Protected Health Information (PHI). **(B) Federal False Statements (18 U.S.C. § 1035) & False Claims Act:** The fabrication of a mental health diagnosis ("Unspecified Schizophrenia Spectrum") to justify detention or secure payments from federal healthcare programs constitutes federal health care fraud. **(C) Conspiracy Against Rights (18 U.S.C. § 241):** Orchestrating a "retaliatory detention" and using clinical gaslighting to shield Harvard from liability for police misconduct is a potential criminal violation of federal civil rights laws regarding conspiracy to deprive a person of their constitutional liberties.

## STATEMENT OF FACTS

**40.** In October 2022, Plaintiff Michael Doe X suffered a Traumatic Brain Injury (TBI) and Post Trauma Stress Disorder and subsequently Slurred speech problem, physical injuries in a motor vehicle accident, resulting in documented noise sensitivity and cognitive vulnerability. Plaintiff Michael Doe X had to manage to get a Harvard university approved sublet accommodation in Harvard in December 2022. However, from December 5 to December 9, 2023, Plaintiff was subjected to a pattern of harassment by Harvard Business School MBA student Kapoor Chandni, including nighttime door-banging and coercion to sign an illegal false contract, constantly mobile text and making false report to Harvard International office to cancel Michael Doe X's Visa, and threatened Plaintiff's Visa and academic status, building obstacle for plaintiff recovery, constantly night time banging scared plaintiff to death. Due to physical and cognitive disability Plaintiff sought help from University Accommodation Managers and Harvard administrations and HUPD. Harvard Accommodation manager and HUPD ignored the disability and insulted the Plaintiff for "bothering their sleep at middle night", HUPD and Harvard accommodation manager in front Kapoor Chandni blamed Michael Doe X's for calling Police at middle night, they want to sleep instead to handling any issues in Harvard accommodation, they only protect Harvard Students. Harvard Police and Accommodation manager shifted their anger due to bothering them sleep at middle night to Michael Doe X's, and clearly told Kapoor Chandni that Harvard Police does not provide any protection to Michael Doe X's. This bias and discrimination against a disable resident at Harvard Housing provoked Kapoor Chandni continue to harass disable Michael Doe X, continued to banging Michael Doe X's bedroom door at middle night, Harvard university **authorized or emboldened** the harassment. This is a significant breach

of the covenant of quiet enjoyment. Harvard police and accommodation management **bias against a disabled Doe X Michael,** Essentially, they punished Doe X Michael for having a medical need for a quiet, safe environment—a need that is protected by the ADA. Harvard Police and accommodation assistant director took a vulnerable person and publicly removed his "shield," which led to the worsening of TBI and PTSD. Michael Doe X's Trauma Brain Injury and PTSD got worsen, Michael Doe X had to shop some medicine online. Michael Doe X got completely destroyed from middle night bedroom banging and hostile atmosphere created by Harvard accommodation management, Harvard Police officer (D) (G) and Harvard Business School student Kapoor Chandni. Michael Doe X had to move out to Harvard another accommodation Peabody ASAP to avoid Harvard Business School student Kapoor Chandni hostile and banging door at middle night.

**41.** Doe X Michael was subjected to a severe pattern of harassment by a Harvard MBA student Kapoor Chandni in December 2022, which included nighttime door-banging, coercion, and threats eviction, cancelling her visa and academic status. Plaitiff had to call Harvard police 3 times for security help at wee hours Dec. 6; 12:14AM, 12:34AM and 1:21AM. Despite reporting these incidents, Harvard Accommodation Managers and HUPD officers failed to accommodate documented cognitive vulnerabilities and noise sensitivity, instead insulting the Plaintiff for "bothering their sleep" and explicitly stating—in the presence of the harasser—that they would not provide plaintiff with protection. This institutional bias and discriminatory neglect created a hostile environment that emboldened the harasser, significantly worsened the Plaintiff's medical condition, and ultimately forced plaintiff to flee the residence for safety concern.

**42. On December 6, 2022,** the Plaintiff emailed the **Harvard Office for Equity, Diversity, Inclusion, and Belonging** (edib@harvard.edu) to request urgent assistance. In the correspondence, the Plaintiff explicitly stated: "Please do not put me on the street to be a homeless person; please do not lock me outside in such a cold winter. I am extremely nervous and in a vulnerable situation. I sustained a car-related injury in October and am currently in a weak state during my recovery... I would [like] Harvard to investigate this case. I am fully following Harvard's regulatory procedures; please give me some days to find other accommodations. Please do not violently evacuate me and make me homeless." However, Harvard did nothing to help plaintiff to accommodate disability,  After the Plaintiff formally disclosed disability and physical

vulnerability to the Harvard Office for Equity, Diversity, Inclusion, and Belonging, Despite having actual notice of the Plaintiff's injuries and need for accommodation, Harvard failed to engage in the required interactive process. Instead, the institution remained willfully indifferent, eventually utilizing the false clinical records from Tufts and Mount Auburn to justify their refusal to accommodate the Plaintiff's disability."

43.    Harvard Kennedy School MA student Cardoso, Beatriz from Brazilian previous President family, Cardoso Beatriz and Harvard Kennedy School Gleitsman Fellow Gonzalo Jara Saba  told that they have had special privilege with Harvard administration. They very quickly finished the sublet procedure of  Harvard Peabody 24-509 to Plaintiff for sublet period Dec 9- January 27.  The sublet agreement for  Harvard Peabody Terrace 24-509  was  initiated  under  fraudulent circumstances by Beatriz Cardoso (a Harvard Kennedy School MA student from a prominent Brazilian political family) and Gonzalo Jara Saba (a Harvard Kennedy School Gleitsman Fellow). To induce the Plaintiff into a sublet for the period of December 9 to January 27, the Defendants knowingly misinformed the Plaintiff, claiming the unit was "very quiet" and that they were vacating for an international trip until January 27. In reality, Cardoso and Jara Saba concealed severe noise issues originating from the upstairs unit. Furthermore, despite the commencement of the sublet, Gonzalo Jara Saba **illegally retained the apartment keys**. He later returned to demand access, admitting they had not started their international trip but were instead staying to prepare for final exams. When the Plaintiff raised concerns regarding the noise and the breach of the agreement, the Defendants asserted they held **"special privilege"** with the Harvard administration. They suggested that their status rendered them immune to Harvard's housing regulations and the rule of law. This claim of immunity was later substantiated by Harvard's subsequent failure to intervene, investigate the Plaintiff's reports, or provide the disability accommodations previously requested in the Plaintiff's December 6 correspondence.

44.    Plaintiff Michael Doe X  moved to a Harvard-approved sublet at the Peabody apartments 24-509.    This status, as confirmed by both Harvard management and the Plaintiff's Harvard research director, appeared to grant  Cardoso Beatriz and Harvard Kennedy School Gleitsman Fellow Gonzalo Jara Saba  total immunity from the university's housing regulations and the standard rule of law. Both of them induced the Plaintiff into the agreement by misrepresenting the unit as quiet—a necessity for her Traumatic Brain Injury (TBI) recovery—while intentionally concealing severe noise issues. Furthermore,  Cardoso Beatriz and Harvard Kennedy School

Gleitsman Fellow Gonzalo Jara Saba illegally retained a key to the apartment 509 and returned unexpectedly to demand re-entry during the sublet period. When the Plaintiff sought assistance, Harvard Housing management explicitly refused to intervene, stating that , Cardoso Beatriz and Harvard Kennedy School Gleitsman Fellow Gonzalo Jara Saba was immune from housing regulations, Harvard accommodation **Management lied about university policy to immunize Brazilian president family students, dysfunctional Harvard accommodation management.** creating a constant security threat to Plaintiff. This refusal to enforce university policies and the open admission of preferential treatment for a politically connected student left the Plaintiff unprotected, exacerbated her medical condition, and constituted a direct failure by the university to provide a safe, regulated living environment. This environment of protected misconduct and institutional bias further obstructed the Plaintiff's recovery and denied her the basic protections afforded to other residents. Institutional Provocation: Harvard Accommodation Management and HUPD did not merely fail to stop the harassment; they actively coached and provoked students to manufacture false complaints against the Plaintiff.

**45.** Michael Doe X's's accommodation upstairs neighbor was a Harvard medical school postdoctoral fellow Hwan Bae and pregnant Eunyoung Park, every middle night time cooked extra meal for pregnancy and cried loudly, the upstairs' apartment's kitchen is just above Michael Doe X's Bedhead, every middle night banging kitchen cabinet door, chopped heavily, every middle night used **garbage disposal unit** ( garburator) in water sink in the kitchen. The water sink is just above Michael Doe X's bedhead. Harvard Medical school post doctoral fellow Hwan Bae and pregnant Eunyoung Park specifically made long time of garburator running after Michael Doe X report to Harvard accommodation management. This like a hard, non-food object (like a metal utensil) is caught in the mechanism, or the motor was failing, it generated a very loud, metallic, grinding, or screeching sound, similar to an electric saw, cause significant vibration, transferred through the plumbing and the structure of the house, potentially making the walls and building shake. Every middle night after 12AM Hwan Bae and pregnant Eunyoung Park also barefoot ran on the floor, moved furniture every middle night. After Michael Doe X report to Harvard accommodation management and Harvard Police, Hwan Bae and pregnant Eunyoung Park Brutal attack Plaintiff Michael Doe X's to forced out from Harvard University accommodation, threaten by making report to Plaintiff school's dean for permanent kicking out from Harvard.

**46.** About 1AM on Dec 27, Michael Doe X had to call Harvard Police, Michael Doe X also walked upstairs to see what happened. Police [D] arrived and stop other police officers to listen to Michael Doe X's report, in front of Hwan Bae and pregnant Eunyoung Park Harvard Police D blamed Michael Doe X why always called Police at middle night, you need to move out from Harvard accommodation. Following two night in corridor Harvard Police openly insulted Michael Doe X for middle night time calls, and Harvard accommodation accusation, Hwan Bae and Eunyoung Park became violently attacked Michael Doe X's's celling at middle night and morning..        Dec    27    afternoon    Harvard    Peabody    manager Kathryn called plaintiff, and insulted plaintiff and asked plaintiff to move out.

**47.** Dec 28, During Hwan Bae and Eunyoung Park brutal deadly attacked Michael Doe X by using garburator and doors, Michael Doe X called Peabody accommodation manager number, but Manager hanged up during critical time. Michael Doe X had to Call Harvard Business school accommodation and transfer to Harvard general administration. Michael Doe X Had to report the details to Harvard General administration regarding upstairs brutal attack and Harvard Police openly insult plaintiff on corridor on Dec 28 and 29 middle night, they forced Michael Doe X to move out from Harvard accommodation.

**48. Harvard accommodation Management Misconduct & Intimidation** The Peabody Accommodation Manager Deveau, Kathryn insulted Plaintiff's disability, cut off nighttime phone lines to prevent Plaintiff from reporting harassment, and coached students to file false complaints against the Plaintiff. Harvard accommodation Management threatened to use the **Harvard International Office (HIO)** to revoke Plaintiff's Visa and contacted Plaintiff's Dean to force Plaintiff into a cold, unsafe basement unit without Michael Doe X's consent. Due to this coordinated harassment, Plaintiff was unable to attend career-defining interviews with the World Bank and IMF.

**49.** Administrative Weaponization: Harvard Housing Management knowingly used these fabricated student complaints to pressure the Plaintiff's Dean's Office, plaintiff research center directors, and the Harvard International Office (HIO), with the specific intent to terminate the Plaintiff's Visa and academic status during a period of medical vulnerability (TBI recovery and PSTD, Physical injury). Intentional Overwhelming: The Defendant Harvard accommodation managers utilized "Mountainous Pressure" tactics—a coordinated combination of physical noise torture, police intimidation, and administrative threats—designed to induce a psychological

14

breakdown in the Plaintiff. Plaintiff had to seek a Harvard Psychiatrist help for this accommodation crisis,    Michael Doe X felt disaster headache, anxiety, heart palpitation, short breath.  Plaintiff had to visit Harvard clinic and primary care doctor. This is first time to visit Psychiatrist in Plaintiff's life. Plaintiff urgent need to get·medical support and peaceful night rest due to the dramatically deteriorated medical symptoms.   Harvard psychiatrist and Primary care doctor provided supportive letter to Harvard accommodation management.

 ,50.    "Facing escalating violence and a refusal of protection from Harvard Police and Management, the Plaintiff sought emergency intervention from municipal and judicial authorities to preserve own life.  **Failure of Municipal andHarvard University Protection: (A) December 28, 2022:** The Plaintiff emailed the **Cambridge City Council** and the **City Manager** pleading for life-saving intervention. **(B) The Jurisdictional Gap:** The Plaintiff contacted **Cambridge 911** seeking emergency police assistance. However, Cambridge Police declined to intervene, stating the matter fell under the jurisdiction of the **Harvard University Police Department (HUPD).** Simultaneously, HUPD refused to act, claiming the situation was a 'management responsibility.' This left the Plaintiff in a zone of non-protection during an active safety crisis. **(C) January 3, 2023:** In a final attempt to find non-carceral safety, the Plaintiff contacted **Cambridge HEART** (Holistic Emergency Alternative Response Team).

**51. Judicial and Fair Housing Formal Notices: (A) January 3 & 5, 2023:** The Plaintiff formally contacted the **Eastern Housing Court**, filing reports under the subject *'Suspicious criminal killing me at Harvard house.'* The Plaintiff detailed the physical toll of this state of siege, including prolonged heart palpitations caused by targeted noise and psychological warfare from unit 609. **(B) Fair Housing Act Citations:** On December 28 and 29, the Plaintiff formally notified Harvard that their attempts to evict a victim of violence violated the **Massachusetts Fair Housing Law.** The Plaintiff explicitly asserted that subtenants and initial tenants maintain equal rights to protection under state residential laws.   Despite these formal notices to Cambridge  City council and Cambridge city manager, Cambridge Police department, Eastern Housing Court, and Harvard University, the Defendants proceeded with a retaliatory eviction of the victim while ignoring the violent conduct of the primary aggressors-Peabody-24-609 Harvard medical school postdoctoral research fellow  Hwan Bae and  pregnant  Eunyoung Park.

 **52.**    Dec 28 and 29 Plaintiff emailed to Harvard and cited Fair housing act against

discrimination:Plaintiff email Harvard: 28 Dec 2022 at 2:28 pm "Massachusetts Fair Housing la w prohibits discrimination in housing, sublet and initial tenants have same right under the Massa chusetts residential  law protection.

53.Harvard Police has insisted this is not their job and they long time directly explained this is accommodation management responsibility, HarvardPolice has been extremely  anger with calls for accommodation  noises.     29 Dec 2022 at 10:31 am     Plaintiff     emailed     to     Harvard accommodation  management: Please help to prevent the further escalated violence and the  potential terrible things. Please help  to save my life. 30 Dec 2022 at 7:49 am Plaintiff emailed to Harvard accommodationmanagement:So any expectation for relocating me or any violent measure     attempt     to accelerating me to check out from Peabody wouldn't help the problems Peabody609 violent behaviors and antisocial behaviors, severely harming public environmental a nd security.  Plaintiff email to Harvard accommodation management on the 2 Jan 2023 at 9:55 am I clarify here again that there is not any possibility for me to relocating in short and future due to the current ongoing violence, such expectations         and any attempts of relocating me only exacerbate ongoing violence of 609-Peabody-24 and the further unpredictable crises for all sides.

54.   Ironically,   5 Jan 2023 at 9:27 pm   Harvard   Kennedy   School   MA   student Cardoso, Beatriz her         partner         Jara Gonzalo         fabricated         that "Plaintiff asked for the termination of the agreement in the last email "," We have notified Peabo dy administration about the lease termination so they will disable your keys and ID after this date ."you simply said that it would be impossible to relocate."(January5)"begin the eviction process i mmediately"Harvard Kennedy school Cardoso Beatriz  and her partner Jara Gonzalo  deliberately twisted plaintiff's statement and forced Plaintiff's **Self-Help Eviction. This caused Intentional Infliction of Emotional Distress:** Threatening to lock a disabled person out in the winter during a TBI recovery.

55. 9 Jan 2023 at 3:12 pm Plaintiff sent out early warning to Harvard housing management, Harvard Housing Sublet office, Harvard University, Harvard Kennedy School Student service, Office of the President Harvard, Office for Dispute Resolution (ODR)     an     early warning notice, because management has been negligent,     Harvard     Kenned     school     fellow Jara Gonzalo holds key and card accessing to Peabody509 in any time with permission of current tenant during sublet period till the 27 January.It is critical to determinate their card and key to ac

cessing Peabody-24-509 during the sublet period. Plaintiff clarified that there is no any possibility to move before the end of tenancy dueto critical healthy condition and life risk. Harvard was warned that Gonzalo had unauthorized access. Failure to fix this is negligence.

**56.** On January 9th,   2023 at 3:51 pm Harvard accommodation assistant director Walker Nathan email out that Plaintiff need contract and avoid any responsibility. 10 Jan 2023 at 8:36 am Plaintiff sent out emailed out to President of Harvard University, Executive Vice President and Harvard housing management. Attached 2 medical letters from plaintiff's primary career doctor and Harvard Psychiatrist. 08:41:47 am, Harvard police Jose Chang sent out email for meeting. Plaintiff    emailed:    I'm afraid once I get memory on the terrible suffering at Peabody-24 509 from 609 ruthless and brutal attack I've felt extremely nerves and whole body stifle, not only emotional and physical pain but I can't speak clearly and explain clearly in any languages.

**57.** Plaintiff clarified Post trauma Stress disorder and speech problem from trauma Brain injury from recent car accident. Harvard Police, management and neighbors took advantage of plaintiff vulnerability and disability from car accident brutally attacked, abused and insulted. Harvard Police officer Joe Change  : check plaintiff healthy condition, plaintiff's complaint about Harvard police insult and discrimination, coached upstairs harassing plaintiff. Harvard Police officer Chang only said "you are okey". Plaintiff said I'm not okey, I 've felt severe heart palpitation, dizziness, short    breath    ,    pain…    Plaintiff    insisted    and    emailed: Would you suggest how to submit application for thoroughly investigation of 609 violent behavi ors and suspicious criminal,How to submit application for thoroughly investigation primary tena nt cheating sublet tenant? Plaintiff also emailed to Harvard housing director on January 10th, 6:11PM and 1:28 pm:  Please help direct HKS students to Harvard Accommodation regulation System.    10 Jan 2023 at 5:55 pm Plaintiff    emailed    to    Harvard    disability center  disabilityresources@harvard.edu attached medical letters from PC and Harvard Psychiatri st.

**58.** January 11 2023 at 12:52 pm Plaintiff emailed to Harvard police officer Joe Chang: How to apply housing protection at Harvard police?Would you suggest how to submit applicatio n for thoroughly investigation of 609 violent behaviors and suspicious criminal,How to submit application for thoroughly investigation primary tenant 509 cheating sublet tenant?    Plaintiff never got answer for the above questions from Harvard Police. Harvard Police effectively "barred the door" to their services, Failure to Provide Equal Access to Services, Deliberate Indifference"

to a Known Threat, Breach of the "Covenant of Quiet Enjoyment"

**59.** However, Harvard accommodation management ignored Harvard medical Psychiatrist and Hospital primary care doctor's letter warning, This intentional destabilization was then used as a pretext for the illegal seizure of the Plaintiff's residence on January 11th. Despite the Plaintiff seeking professional help for this accommodation-induced crisis, Harvard management willfully ignored a formal letter from a Harvard University Psychiatrist and Primary care doctor's letter. This medical warning explicitly cautioned management about the Plaintiff's condition, after Harvard police officer Joe Change details check and said:"you are okey, your health condition is okey". Nevertheless, the Defendants Harvard Police and Harvard housing management disregarded the clinical advice of their own medical staff and Police officer Joe Change evaluation, to violently carry out the seizure on January 11. This conduct demonstrates a malicious disregard for the Plaintiff's health and a strategic use of plaintiff's disability to justify an illegal eviction. Defendant Harvard Accommodation Management deliberately "coached" and "inspired" Harvard Kenned school Cardoso, Beatriz and Jara Gonzalo , Harvard medical school postdoctoral fellow Hwan Bae and Eunyoung Park to manufacture false grievances against the Plaintiff. This was done to create a pretext for the Plaintiff's eviction and the revocation of academic Visa. **Condoning Illegal Conduct:** By falsely stating that Jara Gonzalo was permitted to retain keys to Plaintiff's unit, Management effectively "deputized" Harvard students to continue the harassment, creating a permanent state of fear for the disabled Plaintiff. **Intentional Use of High-Conflict Students:** Management intentionally ignored the long time campaign of noise torture (the midnight machinery) to induce a medical crisis in the Plaintiff, which was then used by HUPD as a pretext for the January 11st assault.

**60.** Despite having Actual Notice of the Plaintiff's Traumatic Brain Injury (TBI) and Post-Traumatic Stress Disorder (PTSD), Harvard Accommodation Management and HUPD acted with deliberate indifference toward the Plaintiff's health. On January 11, 2023, the Defendants received formal medical letters from a Harvard University Psychiatrist and a Primary Care Physician. These documents explicitly cautioned that the Plaintiff was experiencing an "accommodation-induced crisis" and required stability for recovery. Rather than deferring to this clinical expertise, HUPD Officer Joe Chang substituted his own non-expert evaluation, telling the Plaintiff, "You are okay; your health condition is okay." This medical gaslighting was used to override professional medical warnings and justify the violent administrative actions that followed.

**61.** The Plaintiff alleges that Harvard Accommodation Management orchestrated a Civil Conspiracy by "coaching" and "inspiring" specific students—including Beatriz Cardoso, Gonzalo Jara, Harvard Medical shool postdoctoral fellow Hwan Bae and Eunyoung Park—to manufacture false grievances. The intent of this coordinated effort was to create a **pretextual paper trail** to justify the Plaintiff's eviction and threaten the revocation of plaintiff's academic Visa. As part of this campaign, Management falsely informed to Plaintiff that Gonzalo Jara was permitted to retain unauthorized keys to the unit, effectively deputizing these students to maintain a permanent state of fear and intimidation against a disabled resident. Defendants intentionally ignored a **36-days campaign of noise torture at middle night**, characterized by midnight machinery and door-banging, barefoot ran on floor, directed at the Plaintiff. Given the Plaintiff's documented TBI-related noise sensitivity, this sensory assault was utilized as a tool for **intentional destabilization**. The goal was to induce a physical and cognitive medical crisis, which HUPD subsequently used as a pretext for the violent assault and seizure on January 11, 2023.

**62.** The Defendants' hostility was motivated by unlawful retaliation. The Plaintiff had engaged in Protected Activity by acting as a whistleblower and participating in an HUPD internal investigation regarding police and housing misconduct. The Defendants executed the January 11th seizure as an "Adverse Action" to punish the Plaintiff for cooperation with investigators and to discredit plaintiff's future testimony by labeling plaintiff-whistleblower as medically "unstable."

**63.** On January 11, 2023, the Defendants bypassed all legal eviction protocols required under M.G.L. c. 186, § 14. HUPD executed a violent seizure of the Plaintiff's residence. Without a court order or medical necessity, the Plaintiff was forcibly removed and sent to a mental health facility. **(A)** Harvard Institutional indifference and Negligence: Despite Plaintiff clearly stating she has injury she is a disable person and under severe Harvard neighbors and Harvard Police physical and psychological attack, plaintiff sent Primary care doctor's letter and Harvard Psychiatrist's medical letter, the President's Office failed to initiate any safety protocol or internal investigation. Harvard President office defaulted Harvard Police internal investigation, this had interest of conflict, Re-traumatization for plaintiff Michael and Proves a Hostile Environment, this caused the Intentional Infliction of Distress for Plaintiff Michael: Ignoring a known vulnerability of Plaintiff and interest conflict. **(B)** Ratification of Abuse: By remaining silent, the President's Office effectively ratified the illegal "coaching" of students by housing management and the retaliatory violence of HUPD, leading directly to the January following assault.

19

64. Harvard Police Joe Chang constantly emailed Michael Doe X for meeting, disregarding Michael Doe X's claim incapability and fragile healthy condition. Michael Doe X felt very stressful, disappointed because this meeting didn't mention how to get a peace to co-exist with up-stairs neighbors, to stop the big harassment. This meeting focused on how Plaintiff disability from car accident and deteriorated physical, mental and cognitive condition due to recent harassment in Harvard house, Police officer Joe Change also investigated how Harvard Police D insulted Michael Doe X and forced Michael Doe X to move out, this recall the terrible harassment and insult process, made Michael Doe X extremely vulnerable and frustrated. Michael Doe X unwilling to recall this terrible scenario, but Harvard Police Joe change constantly pressed Plaintiff. This like an inform investigation, but why police office investigation is taken only by one police officer individual Joe change.

65. Then Michael Doe X immediately sent out an email and asked Harvard Police to provide special protection, because Michael Doe X felt unsafe after cooperated with Harvard police officer for internal investigation. Despite Michael Doe X  expressed an active complaint and fear regarding Harvard Police Officer D,  But Harvard Police department didn't answer for  any protection to Michael, Harvard Police Department also didn't  **recuse itself** from further interactions with Michael to avoid the appearance of retaliation. Harvard Police also didn't make an administrative order telling Harvard Police D not to contact Michael.

66. Coercive Interrogation and Medical Exploitation: HUPD Officer Joe Chang engaged in a pattern of administrative harassment by persistently demanding meetings with the Plaintiff, despite being repeatedly informed of the Plaintiff's medical fragility and cognitive incapacity. Rather than addressing the urgent safety threats posed by the upstairs neighbors, Officer Chang's interrogations were focused on the Plaintiff's disabilities from a car accident and the prior misconduct of Harvard Police Officer D, who had previously insulted and attempted to force the Plaintiff out of Peabody -24-509. By forcing a TBI and PTSD survivor to repeatedly re-live these traumatic events, Officer Chang utilized the "investigation" as a tool for psychological intimidation. This pressure exacerbated the Plaintiff's physical and mental collapse, serving to destabilize the victim rather than protect him.

67. Retaliation Following Witness Cooperation: The Plaintiff's participation in this solo-officer investigation constitutes Protected Activity. Following meeting with Harvard Police Officer Chang Joe, the Plaintiff formally emailed the Harvard Police to request special protection,

explicitly stating that the investigative process had left him feeling unsafe and vulnerable to further retaliation. The Harvard University Police Department and the University Administration failed to provide any protective measures. This refusal to act, occurring immediately after the Plaintiff provided testimony regarding police and housing misconduct, suggests that the "investigation" was a pretext used to identify the Plaintiff's vulnerabilities prior to the final forced detention-retaliation on January 11.

**68.** January 11 Michael Doe X had swam for reducing pain and stress. Then returned to Harvard Peabody-24-509 for rest. After Plaintiff just entered to apartment-Peabody -24-509, suddenly Harvard Police D violently attacked Michael Doe X's's door, Michael Doe X scared and immediately started to call 911. During Michael Doe X spoke with 911, Harvard Police D Broken Michael Doe X's apartment door and used Gun to Michael Doe X's. Harvard Police D used excessive force by violently banging on Plaintiff's door and pointing a firearm at Plaintiff. Michael Doe X had to knee down to beg for life-preservation. Michael Doe X lost the most fundamental human dignity. Michael Doe X has cancer-patient mother and father waiting plaintiff to back to home. Michael Doe X has to survive to get back to own home. Michael Doe X found Police D full with the strong resent, he strictly forbidden Michael Doe X to give up everything by using Gun. Michael Doe X asked water to get calm, Police D denied. Michael Doe X asked Police D to allow to call Harvard psychiatrist, or call Harvard colleague, Police D denied. Michael Doe X want to call own Primary Doctor, Police D denied. Michael Doe X ask to allow to show Harvard Psychiatrist letter and Primary care doctor's letter, Police D denied. Apparently, Harvard Police Officer D retaliated against Michael Doe X for participating in an internal investigation. Harvard Police Officer D blocked medical staff from treating Plaintiff's heart palpitations and deteriorated pains denied Plaintiff water during transport. **Coercive Isolation:** HUPD actively blocked Plaintiff's Primary Care Physician and Harvard Psychiatrist from contacting the Plaintiff, effectively "disappearing" a researcher into a facility to prevent plaintiff from reporting the January 11st assault. Plaintiff re-traumatized from Harvard **institutional betrayal** when Harvard Police leveraged plaintiff's cooperation in an internal investigation to facilitate a violent, retaliatory home invasion rather than providing the protection Plaintiff requested. By facing a forced entry and firearm at the hands of the very department Plaintiff had formally reported for harassment, Michael was subjected to **retaliatory excessive force** and profound **re-traumatization**. This cycle was completed by the coercive isolation from medical and psychiatric support, isolated from plaintiff

Harvard colleague and external human world, effectively weaponizing the investigative process to silence plaintiff and strip plaintiff of the most fundamental human dignity.

69.    The Assault & Forced detention . Obviously, this is Harvard Police Officer D retaliated for Plaintiff's participation in an internal investigation by assaulting Plaintiff's residence, provoked harassment. Unconstitutional Seizure: Harvard Police officer D drew a firearm on the compliant, kneeling Plaintiff. To cover up this Fourth Amendment violation, Harvard Police Officer D initiated an Involuntary Transportation (Section 12). This was not a medical intervention; it was forced detention-Kidnapping under color of law used to disappear a whistleblower.

70.    Then Ambulance medical staff came in. Plaintiff told Ambulance medical staff I've felt heart palpitation, dizziness and fear. Ambulance medical staff took medical equipment want to check plaintiff, but Harvard Police officer D forbidden medical staff to check plaintiff.    Plaintiff want a glass of water. Ambulance staff gave a glass of water. Then Plaintiff asked Ambulance medical staff: I want to call my primary care doctor and Harvard Psychiatrist, Harvard Police D said NO,  need to move Plaintiff out from Harvard accommodation. Plaintiff said I have medical letter from my primary care doctor and Harvard Psychiatrist, I'm allowed to stay here, I can show you the paper-original letters. Harvard Police D said, no, we have to remove you from Harvard accommodation.  Plaintiff said I can walk, but Harvard Police told no, we don't allow you to walk. You need to lay down and we take you to ambulance. Plaintiff completely lost human library. Plaintiff was forcibly detained and placed in an ambulance. Harvard Police officer D interfered with EMTs, preventing emergency medical staffs from treating Plaintiff's heart palpitations, and denied Plaintiff water.

71. Harvard Police committed a profound violation of the Fourth and Fourteenth Amendments by executing an **Unlawful Entry & Excessive Force** incident, breaking into Michael's home and pointing a firearm without provocation. Harvard Police.  This unconstitutional seizure constituted a **Malicious Misuse of Process** and **Coercive Isolation**, as the department weaponized a welfare check to bypass housing laws and strip a whistleblower of his dignity. By physically obstructing EMTs during an **Interference with Emergency Medical Services** and blocking access to his physicians, the officers displayed **deliberate indifference** to Michael's medical needs in a clear act of institutional retaliation.

72.    In Ambulance medical staff asked what healthy problem Michael Doe X felt, Michael Doe X said  severe heart palpitation and dizziness. However, Harvard Police officer G immediately

22

stop medical staff enquire. Plaintiff felt extremely dangerous when Harvard Police G stop medical staff normal communication with plaintiff.  After arrival to Mount Auburn Hospital, Plaintiff told nurse  heart palpitation and dizziness, need medical help and speak with own primary doctor in Mount Auburn Hospital, but Harvard Police immediately stop nurse talk. Plaintiff felt extremely dangerous and scared,  completely lost human library and most basic medical help. Nobody know where I'm and what Harvard Police is planning to do.

   **73.**    Plaintiff got into toilet, used own smart phone to send emails for emergency life-saving intervention to some Harvard colleagues and friends: emergency,  come to Mount Auburn Hospital to save me.  Including Harvard Police officer Joe Chang (never replied). Plaintiff's Harvard research director, Harvard senior fellow Harvard professor and Plaintiff friends.

   **74.**    Fourth Amendment Violations: Excessive Force and Unlawful Seizure. On January 11, 2023, Harvard Police Officer D executed a violent, warrantless entry into the Plaintiff's residence while the Plaintiff was actively seeking help from 911 dispatch. Excessive Force: Harvard Police Officer D drew and pointed a firearm at the Plaintiff, who was non-violent and very vulnerable. Human Rights Violation: The Plaintiff was forced to kneel down and plead for preservation- life under the threat of lethal force, constituting an unconstitutional seizure and a gross abuse of police power.

   **75.**    Retaliatory Assault and Whistleblower Suppression: This assault was retaliatory animus directly resulting from Plaintiff's participation in an internal HUPD investigation. Harvard Police Officer D's conduct—specifically the denial of the Plaintiff's right to present medical documentation from a Harvard Psychiatrist and Plaintiff's Primary care doctor's medical letter— indicates that the Section 12 Involuntary Transportation was a bad-faith pretext used to "disappear" a whistleblower and hide the primary Fourth Amendment violation.

   **76.**    Denial of Medical Care and Interference with EMTs Despite the Plaintiff exhibiting symptoms of acute medical distress (heart palpitations and dizziness), the Defendants Harvard Police D and G: (A). Blocked Treatment: Actively interfered with EMTs and hospital nurses, preventing them from treating the Plaintiff or inquiring about his health.(B).Denied Basic Needs: Withheld water and refused the Plaintiff's requests to contact his Primary Care Physician and Psychiatrist. (C). Coercive Transport: Forcibly restrained the Plaintiff on a gurney despite his ability to walk, stripping him of all personal liberty and human dignity.

   **77.** False Imprisonment and Forced Incommunicado: The Defendants enforced a Total

Communication Blackout, forbidding the Plaintiff from contacting the external world or legal counsel. This "Coercive Isolation" was an attempt to prevent the Plaintiff from reporting the HUPD and housing management assault. The Plaintiff was forced to hide in a hospital restroom to send emergency "life-saving intervention" emails to Harvard colleagues and friends, which serve as contemporaneous evidence of Plaintiff's well-founded fear for plaintiff's life while in police custody.

**78.** Michael Doe X walked out from toilet and immediately run away through hospital door to outside, due to the injury and disability, fragility, plaintiff couldn't run far away, there are many cars, Plaintiff had to avoid cars for safety concern and stop, Harvard Police G captured plaintiff back and extremely rude pushed plaintiff to the false prison- a basement cell with a special security guard . The basement is so cold, but Harvard police G and Mount Auburn Hospital security denied to provide any medical help. Harvard police Officer used excessive physical force to push the Plaintiff into an unheated basement cell. Despite the Plaintiff's fragile state and the extreme cold of the environment, Harvard Police and Mount Auburn Hospital security explicitly denied the Plaintiff's requests for medical evaluation or assistance, effectively holding the Plaintiff in a state of false imprisonment without access to medical care and communication with external world.

**79.** January12, Plaintiff asked to speak with own primary care doctor in Mount Auburn hospital and asked medical help for heart palpitation and physical pain, headache. But Harvard Police G and Mount Auburn security kept denying. January 12, Plaintiff's Harvard close friend came to visit, and Plaintiff asked friend to seek emergency help from Primary care doctor in Mount Auburn hospital. At the hospital and Tufts facility, Plaintiff was denied access to own Primary Care Physician and subjected to invasive questioning about privacy while plaintiff in a health crisis. A psychiatrist in Mount Auburn Hospital came and told that I have to be transfer you to another hospital due to Harvard interfered. This psychiatrist didn't make any medical exams and informed plaintiff has to be transferred because too many calls from Harvard. Plaintiff said need to speak with primary care doctor in Mount Auburn Hospital, but was denied. Harvard Police and Mount Auburn hospital attempt to completely isolate plaintiff from external world. Placing a "fragile" individual in a cold basement cell is a violation of the standard of care and federal disability protections. The "extremely rude" physical handling of a known disabled researcher by Harvard police G created a discriminatory environment that prevents the individual from safely accessing the medical services of the affiliated hospital

**80.** Evening time plaintiff was taken to another ambulance and plaintiff was told if listening everything in hospital, plaintiff will be released within 6 months. Beside of this plaintiff wasn't allow to ask any questions. Tuft medical center nurse only provide few times hot pad for plaintiff's heart palpitation and injury pain. A doctor gave some tablet, plaintiff told her that " I have Trauma Brain Injury ( TBI), can't take this tablet. patient need to treat Trauma Brain injury and dizziness. But nobody care, plaintiff was told this is a mental facility, only treat mental problem. Plaintiff has Post trauma Stress disorder and anxiety, but Tuft medical center didn't provide any treatment. Plaintiff missed booked Physical therapy and felt injury pain, but Tuft didn't want to release plaintiff. Plaintiff had to call a lawyer on January 14 and on January 15 emailed to a lawyer for a immediately district court hearing. On January 19 Plaintiff submitted an official form for immediately district court hearing. The second day-January 20, Tuft medical center immediately discharged plaintiff but didn't give any paperwork, no discharge paperwork, Tuft also didn't tell plaintiff anything regarding medical record. Plaintiff don't know anything related to medical record, this is the first time for Plaintiff to be hospitalized in the U.S.A hospital. Plaintiff extremely hard to get back to human world after Tuft medical center mental facility isolation and coercive control. Plaintiff injury, TBI and PTSD completely got worsen in Tuft Medical center mental facility.

**81.** During plaintiff was in Tuft medical center, Plaintiff's Harvard research center director came to converse plaintiff to move out from Harvard Peabody accommodation, because Plaintiff's research director faced career risk if plaintiff would stay in Peabody-24-509 apartment. Because Harvard accommodation management and Brazil president family need this apartment. Plaintiff denied this requirement. Obviously, Tuft medical center cooperated with Harvard Police and Harvard accommodation management to keep Plaintiff away from own accommodation, forced plaintiff to move out. Since Plaintiff clearly denied to move out from this apartment, Tuft medical center custody plaintiff in mental house, this enable plaintiff to completely loss human library, Tuft coercion control and monitor patient, Plaintiff incapable to call parents and completely lost affection . During Covid-19 time without Plaintiff's consent Tuft sent another patient to share room with plaintiff, plaintiff felt unsafe and frustrated, this completely worsen plaintiff's PTSD, Plaintiff asked Tuft to provide a single room for just one patient, but Tuft didn't arrange this. Plaintiff was held in a hospital basement and a Tufts facility for 10 days. During this time, Plaintiff was denied the right to contact a Primary Care Physician and Harvard psychiatrist. Both hospital

25

Facility staff subjected Plaintiff to invasive, irrelevant questioning regarding privacy while ignoring physical medical emergencies and Plaintiff's anxiety, PTSD, Trauma Brain Injuries.

82. The Plaintiff alleges that Harvard University officials used their presence at Tufts Medical Center to pressure Plaintiff into surrendering own Peabody accommodation. Using a medical stay to negotiate housing contracts constitutes a breach of the covenant of quiet enjoyment and illegal eviction practices, this is framed not as a medical necessity, but as a tactical maneuver to isolate the Plaintiff and facilitate the seizure of plaintiff's apartment for third parties.

83. Total Collapse of Cognitive and Social Function: **(A)** As a direct result of the 46-day brutal harassment-intended emotional torture and the subsequent 10 days retaliatory forced detention in a false prison,, Plaintiff's TBI regressed to a state of total social withdrawal and selective mutism. **(B)** Severance of Family Bonds: Due to the Defendants' intentional destruction of Plaintiff's mental health, Plaintiff became unable to communicate with her mother for over a year . Plaintiff's mother passed away during this period of isolation, depriving Plaintiff of their final opportunity for familial connection—a loss caused entirely by the Defendants' malice. **(C)** Permanent Career Destruction: Plaintiff, once a high-functioning researcher capable of World Bank/IMF interviews, has been rendered unable to engage in the "human world," effectively ending a prestigious academic career.

84. ˙ "Defendants Tufts Medical Center and Mount Auburn Hospital knowingly entered false diagnoses into the Plaintiff's medical records. These diagnoses were fabricated in response to the Plaintiff's factual reports of Harvard police misconduct and housing harassment. Devoid of clinical evidence, these records served as a retaliatory tool intended to discredit the Plaintiff and shield Harvard University from potential liability. As a direct result of this 'clinical gaslighting,' the Plaintiff suffered profound psychological harm, leading to total isolation and selective mutism, arising from the realization that any further truthful disclosure would be used to further pathologize them."**(A) Fraudulent Concealment of Diagnosis:** Defendants Tufts and Mount Auburn Hospital intentionally withheld Plaintiff's medical records and diagnoses from the Plaintiff for over 2 years. Bad Faith Labeling: Defendants entered intended wrong diagnoses and other "Severe Mental Illnesses" into Plaintiff's permanent record without clinical evidence, without notifying the Plaintiff, and without providing any corresponding medical treatment. **(B) Obstruction of Justice:** This concealment was designed to prevent the Plaintiff from challenging the records and to ensure that the Plaintiff's factual reports regarding the Harvard Police and Accommodation Management

would be dismissed as "delusions" by future medical providers and legal authorities. **(C) Coercive Isolation:** Defendants Tufts medical center and Mount Auburn Hospital actively blocked Plaintiff's Primary Care Physician and Harvard Psychiatrist from contacting the Plaintiff, effectively "disappearing" a researcher into a facility to prevent them from reporting the January 11st assault.

## CLAIMS FOR RELIEF (CAUSES OF ACTION)

**85. COUNT I: Violation of 42 U.S.C. § 1983 – Fourth Amendment (Unreasonable Seizure) Deprivation of Rights Under "Color of Law"** **(A)** At all times relevant to this Complaint, Defendant HUPD officers were acting under **Color of Law** as Special State Police Officers appointed under M.G.L. c. 22C, § 63. **(B)** By exercising the state-delegated power of "Police Transport" and "Emergency Restraint" under M.G.L. c. 123, § 12, Defendants performed a "public function" traditionally reserved for the State. **(C)** Defendants abused this state authority to violate Plaintiff's Fourth and Fourteenth Amendment rights by using the Section 12 process not for medical safety, but as a tool for administrative removal and retaliation against Plaintiff participating internal investigation

**86. COUNT II: Violation of M.G.L. c. 123, § 12 (Abuse of Emergency Restraint)** Section 12 is strictly limited to individuals where "failure to hospitalize would create a likelihood of serious harm by reason of mental illness." **5.** Defendants HUPD and Housing Management violated the specific requirements of Section 12 by: **\* Pretextual Use:** Using the statute to effectuate a "midnight eviction" and "institutional takedown" of a whistleblower rather than addressing a clinical emergency. **\* Bad Faith:** Disregarding written clinical evidence from Plaintiff's Harvard-affiliated psychiatrist and PCP—submitted prior to the raid—which explicitly stated Plaintiff was stable and not a danger. **\* Weaponization of Disability:** Using Plaintiff's TBI-induced "selective mutism" as a false indicator of "psychosis" or "lack of cooperation" to justify an involuntary seizure. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein. **(A)** On January 11, while Plaintiff was seeking 911 assistance for her own safety, Defendant HUPD Officer D breached Plaintiff's residence by force. **(B)** Defendant Officer D drew his service firearm and leveled it at the Plaintiff, who was non-combative and kneeling, constituting an objectively unreasonable use of excessive force. **(C)** Defendants utilized M.G.L.

c. 123, § 12 as a mere pretext to effectuate a warrantless arrest and custodial detention without probable cause or clinical necessity. **(D)** This seizure was objectively unreasonable because Plaintiff was compliant and not a danger to herself or others, a fact evidenced by medical letters from her psychiatrist and primary care doctor which Defendant Officer D explicitly refused to review.

87. **COUNT III: Violation of 42 U.S.C. § 1983 – First Amendment (Retaliation) (A)** Plaintiff's formal reports regarding HUPD misconduct and the preferential "immunity" granted to students associated with a foreign president's family constitute protected speech on matters of public concern. **(B).** Immediately following these disclosures, Defendants initiated a coordinated "institutional takedown," including escalating surveillance and "proxy harassment". **(C).** The retaliatory midnight assault and the use of a pretextual Section 12 to "disappear" the Plaintiff into a psychiatric facility were adverse actions intended to silence a whistleblower and undermine her credibility. Defendants Harvard Police (HUPD) and Housing Management abandoned their duty to protect Plaintiff's legitimate civil rights. Instead, they adopted a "retaliation policy" to punish Plaintiff for whistleblowing. This included **coaching other students to file false complaints** to create a fraudulent administrative record. This manufactured pressure was intentionally designed to **force Plaintiff's school and research center leadership** to remove Plaintiff from Harvard University, effectively using administrative sabotage as a weapon of retaliation.

88. **COUNT IV: Abuse of Power and Violation of Massachusetts Housing Code  (A).** Defendants Harvard Police and Housing Management completely destroyed the rule of law by abandoning their duty to protect the Plaintiff's legitimate civil rights. **(B).** Instead of enforcing **Massachusetts Housing Code** quiet hours and protecting a disable vulnerable resident, Defendants adopted a "Retaliation Policy." **(C).** HUPD and Housing Management **coached students** to harass the Plaintiff and file false complaints. This was a deliberate abuse of power intended to pressure Plaintiff's school and research center leadership into forcing Plaintiff out of the University. **(D).** By attacking a disabled resident during legitimate nighttime sleeping hours, Defendants converted a protective police function into a predatory mechanism of institutional torture.

**89. COUNT III: Violation of 42 U.S.C. § 1985 – Conspiracy to Interfere with Civil Rights**
**13.** Defendants Harvard University and Hospital entities engaged in a "meeting of the minds" to deprive Plaintiff of her constitutional and statutory rights. **(A).** This conspiracy is evidenced by the coordinated sequence of events where University Housing "inspired" false grievances, HUPD executed a midnight raid, and Hospital Defendants blocked Plaintiff's medical advocates while recording fabricated clinical data. **(B).** The purposeful refusal to allow Plaintiff to speak with her established medical providers was a joint effort to ensure the "Medical Blacklisting" was successful and the Plaintiff was discredited.

**90. COUNT IV: Violations of the ADA & Rehabilitation Act § 504 (Failure to Accommodate) (A) .** Plaintiff is a "qualified individual with a disability" (TBI and PTSD) of which Defendants had actual knowledge. **(B).** Instead of providing reasonable accommodations for her noise sensitivity, University Management "coached" students to increase "midnight machinery" noise (the garburator) specifically to induce a neurological collapse. **(C).** Defendants weaponized Plaintiff's medical vulnerabilities—specifically plaintiff's state of selective mutism and TBI—to manufacture a pretext for plaintiff's removal from housing rather than providing the duty of care mandated by law.

**91. Refined Claim:** Defendants engaged in a gross abuse of power by failing to provide accommodations for Plaintiff's TBI and PTSD. Rather than ensuring a safe environment, HUPD and Housing Management **weaponized their authority** to attack a vulnerable, disabled resident during legitimate nighttime quiet hours. By failing to enforce the **Massachusetts Housing Code regarding quiet enjoyment,** and instead encouraging "midnight machinery" noise, Defendants converted a medical vulnerability into a tool for institutional harassment.

**92. COUNT V: Violation of the Fair Housing Act (Constructive Eviction & Discrimination)**
**(A).** Defendants engaged in discriminatory housing practices by intentionally disrupting Plaintiff's sleep and coaching other residents to file false complaints against plaintiff. **(B).** Defendants further weaponized administrative channels, including the Harvard International Office (HIO) and plaintiff's school leadership, to threaten Plaintiff's visa status during a period of medical vulnerability. **(C).** These actions created a predatory and hostile living environment calculated to force a disabled resident to vacate plaintiff's housing without judicial oversight.

**93. COUNT VI: Violation of M.G.L. c. 186, § 14 (Illegal Self-Help Eviction& Housing Code Violation) (A).** Under Massachusetts law, a landlord is prohibited from using force or "coercive control" to regain possession of a residential unit. **(B).** By using an HUPD assault and a Section 12 psychiatric transport to physically remove Plaintiff from her Peabody sublet, Defendants bypassed the mandatory Summary Process under M.G.L. c. 239. **(C).** This "midnight eviction" constitutes a *per se* violation of the Commonwealth's housing protections. Defendants willfully violated the **Massachusetts Housing Code and Quiet Hours** standards. HUPD and Housing Management completely destroyed the rule of law by bypassing the Housing Court. By coaching students to harass the Plaintiff and using HUPD to execute a "midnight eviction" under the guise of a Section 12, Defendants committed a breach of the covenant of quiet enjoyment and an illegal self-help eviction, violating the statutory protections afforded to all Massachusetts tenants.

**94.COUNT VII: Intentional Infliction of Emotional Distress (IIED) (A) Extreme and Outrageous Conduct:** Defendants' conduct was "extreme and outrageous," exceeding all possible bounds of human decency tolerated in a civilized society. Defendants Harvard Police (HUPD) and Housing Management abandoned their duty to protect the Plaintiff's civil rights and instead utilized their authority to execute an "Institutional Takedown." **(B) Predatory Harassment and Sleep Deprivation:** Defendants intentionally and openly abused their power by targeting the Plaintiff during the "middle-of-the-night" quiet hours—the period of plaintiff's greatest neurological vulnerability. Defendants openly discriminated against the Plaintiff's basic human right to sleep by "coaching" students to engage in prolonged harassment (midnight machinery and door banging) to induce a medical collapse. (C) **Malicious Insult and Open Abuse:** During the January 11th assault, Defendants openly insulted and devalued the Plaintiff's legitimate rights as a disabled resident. By weaponizing her TBI-induced selective mutism and physical injuries, Defendants treated a medical crisis as a criminal act, mocking plaintiff's vulnerability. (D). **Inhumane Conditions of Confinement:** Defendants intentionally detained Plaintiff in a cold basement, denied plaintiff's access to basic necessities like water, and refused plaintiff requests for life-preserving medical care for her TBI and physical injuries. **(E) Severance of Sacred Familial Bonds:** Most egregiously, Defendants acted with "malicious disregard" by intentionally severing Plaintiff's ability to communicate with external human world: her mother during the final days of her mother's terminal cancer. **(F) Catastrophic Injury:** By maliciously preventing a final

connection with a dying parent while holding the Plaintiff under a fraudulent medical pretext, Defendants caused catastrophic, permanent, and "cascading" emotional and neurological injury that no reasonable person should be expected to endure.

95. **COUNT VII: Intentional Infliction of Emotional Distress and Intentional Emotional Torture** Extreme and Outrageous Conduct: Defendants' conduct exceeded all possible bounds of human decency tolerated in a civilized society. Defendants utilized a calculated campaign of psychological pressure, including sleep deprivation (coaching students to use "midnight machinery"), physical intimidation with drawn firearms, and "clinical gaslighting" to induce a mental collapse. The Plaintiff asserts that the Defendants acted with specific malice, knowing the Plaintiff's vulnerability due to a pre-existing Traumatic Brain Injury (TBI), Post Trauma Stress Disorder ( PTSD) and physical injury. The "emotional torture" and "retaliatory detention" triggered a severe regression of the TBI, PTSD and Physical injury. Defendants' Intentional Infliction of Emotional Distress (IIED) re-re-re traumatized Plaintiff rest life, Plaintiff seeks damages for a life-altering, permanent disability. Defendants Harvard University Police and Housing Management engaged in a calculated campaign of psychological torture that exceeded all bounds of a civilized society. This Extreme and Outrageous Conduct was not merely negligent but was an intentional, malicious effort to break the Plaintiff's physical, mental and cognitive faculties. Defendants utilized a systematic application of sleep deprivation, physical harassment, intimidation through the display of drawn firearms, and "clinical gaslighting." Furthermore, Defendants specifically exploited the Plaintiff's known Traumatic Brain Injury (TBI) and post trauma stress disorder, weaponizing her pre-existing disability to induce a total physical-cognitive and mental collapse. Defendant Harvard Police and housing management treating a medical vulnerability as a tool for institutional harassment and "psychological torture."This exploitation of a vulnerable person meets and exceeds the "outrageousness" requirement necessary for a finding of IIED

96. **Loss of Familial Association and Consortium:** By detaining the Plaintiff under a fraudulent medical pretext during plaintiff mother's final days, Defendants acted under "color of law" to maliciously sever the sacred bond between parent and child. Defendants forced the Plaintiff into a "state of disappearance," holding plaintiff incommunicado and depriving her of the right to familial consortium—the comfort, society, and emotional support of her dying mother. Because this

interference occurred during the finality of the mother's death, the loss is irreplaceable and the harm is permanent, incapable of being mitigated. This constitutes a unique category of mental suffering and a violation of the Plaintiff's protected interest in familial association under common law and 42 U.S.C. § 1983.   Harvard 36 days harassment and forced detention caused a total psychological collapse and affection loss,  leading to permanent social withdrawal and selective mutism. Most significantly, this state of forced isolation prevented the Plaintiff from communicating with plaintiff's mother for over a year, directly resulting in the permanent loss of their final opportunity to connect before her death.

97. **Permanent Neuropsychological Injury and Hedonic Damages:** The "institutional takedown" orchestrated by Defendants resulted in profound and permanent "cascading harm." This coercive control and forced detention directly caused the destruction of the Plaintiff's independent thinking and Plaintiff's "normal human character,"  permanent selective mutism, resulting in a new, distinct neuropsychological injury. This injury is evidenced by concrete clinical symptoms, including selective mutism and a total collapse of the sense of safety. As a direct result of Defendants' actions, Plaintiff has suffered a permanent loss of the enjoyment of life (hedonic damages) and a destruction of plaintiff's ability to engage in ordinary human communication and social interaction.   Plaintiff seeks hedonic damages for the permanent loss of enjoyment of life and social interaction.

98. **COUNT VIII: Abuse of Process, Medical Defamation, and Violation of M.G.L. c. 111, § 70E Violation of the Patient Bill of Rights (M.G.L. c. 111, § 70E):** Hospital Defendants violated the Massachusetts "Bill of Rights" by unilaterally recording a fabricated diagnosis—specifically "Unspecified Schizophrenia Spectrum and Other Psychotic Disorder"—without ever informing the Plaintiff. By failing to disclose this diagnosis, Defendants stripped Plaintiff of her right to **Informed Consent** and patient autonomy, preventing her from making appropriate decisions about her treatment, risks, or benefits.

99. **Clinical Gaslighting and False Imprisonment:** For approximately 10 days, Hospital Defendants illegally held the Plaintiff in a state of "coercive control." This detention was not for clinical care but served as a mechanism for **"Clinical Gaslighting,"** pathologizing the Plaintiff's

factual reports of police misconduct to provide a "veneer of legality" for the HUPD assault and to shield Harvard University from liability.

100. **Destruction of Cognitive and Mental Integrity:** The Hospital's coercive environment and constant surveillance—including treating the Plaintiff like an **"experiment example"** for a room full of PhD students without plaintiff's consent—directly destroyed Plaintiff's mental and cognitive capability. This environment caused "cascading harm," transforming a high-functioning researcher into a victim of institutional trauma, and permanently damaging plaintiff's independent thinking and communication skills.

101. Hospital Defendants conspired with Harvard Police to intentionally fabricate the Plaintiff's diagnosis, basing medical conclusions solely on the unilateral disinformation and misinformation provided by Harvard police rather than any objective clinical evidence. To protect this fabrication, Defendants conspired to intentionally withhold the Plaintiff's medical records for over two years. This **Fraudulent Concealment** prevented the Plaintiff from discovering the medical defamation contained therein and, more critically, delayed life-preserving treatment for physical injuries sustained in a car accident and the January 11th assault. As a direct result of this concealment and the lack of proper clinical intervention, the Plaintiff's Traumatic Brain Injury (TBI) was allowed to regress significantly, causing permanent and avoidable neurological decline.

102. **Violation of Common Law Duty/Battery:** By treating the Plaintiff for a fabricated mental illness while ignoring her actual physical injuries and refusing to disclose her diagnosis, Hospital Defendants breached the common law duty of disclosure. Under Massachusetts law, this failure to meet the standard of informed consent constitutes a form of **Medical Negligence and Battery.**

103. **Conspiracy and Medical Blacklisting:** The result of this conspiracy between the Harvard University and Hospital Defendants was the creation of a permanent **"Medical Blacklist."** By recording fraudulent "suicidality" and "psychosis" to explain away Plaintiff's legitimate grievances, Defendants successfully sabotaged Plaintiff's academic career and her ability to receive legitimate medical care in the future.

**PRAYER FOR RELIEF**

**104. WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in plaintiff's favor and against Defendants Harvard University, Harvard University Police Department, and Mount Auburn Hospital and Tuft medical center, granting the following relief: **Declaratory and Injunctive Relief**

**105. Declaratory Judgment:** A formal declaration that the actions of the Harvard University and Hospital Defendants violated the Plaintiff's rights under the First, Fourth, and Fourteenth Amendments to the U.S. Constitution; 42 U.S.C. §§ 1983 and 1985; the Americans with Disabilities Act (ADA); the Fair Housing Act; and the laws of the Commonwealth of Massachusetts.

**106. Permanent Injunction (Medical Records):** An order compelling Hospital Defendants to immediately expunge, redact, or delete all fraudulent and defamatory mental health diagnoses—specifically "Unspecified Schizophrenia Spectrum" and fabricated "suicidality"—and to replace them with a neutral statement noting the record was corrected by Court Order.

**107. Permanent Injunction (Institutional Retaliation):** An order prohibiting Harvard University, HUPD, and Housing Management from engaging in further retaliatory actions, including administrative sabotage of Plaintiff's communication with Harvard schools and research center and plaintiff's academic standing.

**108. Order for Production:** An order compelling the immediate turnover of all unredacted internal communications and "coaching" instructions sent between    Harvard Housing Management, students, and HUPD regarding the Plaintiff.

**109.** Compensatory Damages: (A) General Damages: An award of compensatory damages in an amount to be determined at trial for the physical injuries, neurological regression of Plaintiff's TBI, and the profound mental anguish and "cascading harm" caused by Defendants' conduct. (B) Special Damages: Compensation for all out-of-pocket expenses, including past and future medical costs for TBI rehabilitation and psychological treatment necessitated by the Defendants' "institutional takedown." Damages for the costs of past and future medical treatment required to address the TBI regression, physical injuries from the assault, and PTSD caused by the two-week custodial "Clinical Gaslighting." (C). Hedonic Damages: Compensation for the permanent loss of

the enjoyment of life, the destruction of Plaintiff's "normal human character," and the permanent injury to her ability to engage in independent thinking and social communication. Compensation for the "cascading harm" of selective mutism, the profound emotional distress of being held in a cold basement without water, and the irreparable loss of the ability to communicate with her dying mother during the medical-determinate final days. (D) Economic Loss: Compensation for the destruction of Plaintiff's career, loss of earning capacity as a researcher. Compensation for the total loss of academic career progression, the loss of World Bank/IMF career opportunities, and the loss of the Harvard research fellowship caused by the "Institutional Takedown."

**110.** Punitive and Exemplary Damages An award of Punitive Damages against all Defendants in an amount sufficient to punish them for their malicious, willful, and "extreme and outrageous" conduct, and to deter such institutional abuse of power in the future—specifically regarding the weaponization of medical disabilities and the fraudulent use of Section 12 seizures.

**111. Equitable and Declaratory Relief** **(A)** Declaratory Judgment: A formal declaration by this Court that the Defendants' use of a Section 12 psychiatric transport as a tool for administrative eviction and whistleblower retaliation was a violation of the Fourth and Fourteenth Amendments. **(B)** Expungement of Records: An order requiring the Hospital and University to expunge all "Medical Blacklisting" data, including the fabricated diagnosis of "Unspecified Schizophrenia Spectrum" and any records of "suicidality" manufactured to shield the Defendants from liability. **(C)** Injunctive Relief: An order prohibiting Defendants from further retaliatory actions against the Plaintiff or further interference with her access to legitimate, non-biased medical care.

**112. Statutory Fees and Costs** **(A).** Housing Penalties: Statutory damages and three months' rent (treble damages) as provided under M.G.L. c. 186, § 14 for illegal self-help eviction and breach of the covenant of quiet enjoyment. **( B).** Attorney's Fees: An award of reasonable attorney's fees and the cost of this action, expert witness fees, and litigation costs pursuant to 42 U.S.C. § 1988 and the ADA.and the Massachusetts Consumer Protection/Housing statutes. . **(C).** Pre-judgment and Post-judgment Interest as provided by law.

**113. General Relief:** Such other and further relief as this Court deems just, equitable, and proper.

**JURY DEMAND**

**114. Plaintiff hereby demands a trial by jury on all counts and issues so triable.**

Respectfully submitted,

*Plaintiff name: Doe Michael X*

*Signature:*                                              *Dated: January 8, 2026.*